MORRIS-POSTON COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19657. Promulgated September 13, 1928.

*David A. Gaskill, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, for the respondent.

348

VAN FOSSAN: On April 1, 1921, the petitioner leased its properties to the Clarkson Mining Co. for a period of 50 years from that date, the latter agreeing to pay certain rentals of specified amounts semi-annually, on July 1 and January 1, during the term of the lease, "for the six months next preceding each such date of payment." The agreement provided that "the lessee may in every year mine and ship from the leased premises five hundred thousand * * * tons of two thousand * * * pounds Avoirdupois each, of run-of-mine coal" and that "each of the annual amounts of rent hereinbefore provided, shall be applied in payment of the royalty for five hundred thousand tons of run-of-mine coal whenever the same shall be extracted and removed from the leased premises." Between the dates of January 1 and January 4, 1922, petitioner received from its lessee the sum of $108,400, being the payment due, under the terms of the agreement, on January 1, 1922. The petitioner made formal record of the receipt of this payment on its books about the time it was received or shortly thereafter, and treated it as income for 1922. The respondent holds that the method of accounting employed in keeping the books was the accrual method and that the payment referred to constituted income for 1921. There are no differences between the petitioner and the respondent in their interpretations of the lease agreement; they differ merely in their views as to the proper year in which to make an accounting, for tax purposes, of the rental payment which became due and payable on January 1, 1922, and was actually paid within a few days thereafter.

The particular provisions of the lease agreement which require our consideration are set forth in the findings of fact. They are entirely clear and the intent of the parties thereto is readily discernible. With these provisions of the agreement before us, and knowing the facts as to the payment of the item in dispute and as to the method of accounting employed in keeping the books, we entertain no doubt of the conclusion announced herein.

The case is governed by the Revenue Act of 1921, and the applicable provisions thereof are found in sections 212(b) and 213(a), which, so far as material, read as follows:

SEC. 212. (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

SEC. 213. (a) * * * The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the tax-

payer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

Thus, it will be observed, the statute requires that all gains, profits, and income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted by statute to be employed in computing net income, any such gains, profits, and income are to be properly accounted for as of a different period. We start, therefore, with the premise that the petitioner was required by statute to include the disputed item of $108,400 in gross income for 1922, in which year it was received, unless, under a method of accounting permitted by statute, it was properly to be accounted for as of 1921.

Clearly, the statute does not say what the method of accounting should be. It does not single out one of two methods to the exclusion of all others. On the contrary, it contemplates that each taxpayer shall adopt such forms and systems of accounting as are in its own judgment best suited to its purposes, provided the method meet the statutory requirement—that it clearly reflect income. As said by the court in a recent case, "the language of the statute connotes flexibility rather than rigidity * * *." *Hyams Coal Co.* v. *United States*, 26 Fed. (2d) 805. So, we are not particularly concerned as to whether the petitioner employed the so-called accrual method of accounting; nor yet, whether there is such a thing as "the" accrual method of accounting. The important thing is that the petitioner adopted an accounting method which it regularly employed in keeping its books of account; and the petitioner's contention as to the proper time for accounting for the disputed item must prevail or fall as the method of accounting employed does or does not clearly reflect income.

Until April 1, 1921, it was the petitioner's accounting practice to account for income, whether reduced to possession or not, and expenses, as of the accounting period in which the income was earned and the expenses were incurred. There was an exception to this practice in that income from renting houses and selling commissary stores to miners was accounted for as deductions were made from the miners' wages on the biweekly pay rolls; though the expenses of maintaining miners' homes and of conducting the commissary store appear to have been accounted for in the same manner as the other expenses of the business. The mere statement of these facts might give to the accounting method the appearance of being a hybrid one, in that a portion of the income and all of the expenses were accounted for as earned and incurred while the remainder of the income was accounted for only as received. Yet its hybrid character may be more apparent than real, depending upon how closely the

income from miners' homes and the commissary store accounted for coincides with the amount which would be accounted for if the same practice were followed as in accounting for other income. However, we have no evidence along that line; and, at any rate, there appears to be no dispute between the parties that the method clearly reflected the income to April 1. The important thing to be observed is that the accounting for income as earned and expenses as incurred, without regard to the time of receipt or payment, is the fundamental basis of the method employed.

Prior to April 1, 1921, petitioner's income was derived chiefly from sales of coal; thereafter, the rental or royalty payments by its lessee constituted the chief source of income. There was no change in the method of accounting for income from other sources or for expenses; but the petitioner then adopted the practice, consistently adhered to since, of accounting for rental or royalty payments only when actually received. This manner of accounting for rental or royalty payments constituted a departure from the accounting method theretofore employed as to all income and expenses, and thereafter employed as to other income and all expenses. Stated briefly, the accounting method employed in keeping the books in 1921 was to account for all income earned during the year, except rentals or royalties to be received under the lease agreement, whether reduced to possession or not, for rentals or royalties actually received within the year, and for all expenses incurred within the year whether actually paid or not.

We entertain no doubt that in the absence of some special or impelling circumstance an accounting method can not clearly reflect income which permits or requires an accounting for a part of the income of an accounting period as earned, whether reduced to possession or not, while at the same time permitting or requiring an accounting for the remainder of the income earned during the accounting period only as actually received. *De Paoli*, 8 B. T. A. 294. Nor is net income clearly reflected by a method of accounting which permits or requires the allocation of the income and of the expenses incident to the earning of that income to different accounting periods. As observed by the court in the *Hyams Coal Co.* case, *supra:*

There is no doubt that under the Revenue Law of 1918 the accrual basis, once adopted, must be consistently adhered to by the taxpayer. The courts have recognized this consistently, and denounced any practice that would result in computing taxes attributable to a given year using the cash basis for a part and an accrual basis for the balance of the year. The law contemplates consistency in the keeping of books once a method is adopted. *N. S. Barstow and Co.* v. *Bowers, Collector*, 15 Fed. (2) 75, 78.

This observation is equally true under the Revenue Act of 1921. If either of the above features is present a distortion of income is

bound to result. We find both of them in the petitioner's accounting method.

The simple facts as to the royalty payment in dispute are that the petitioner was entitled to receive from its lessee, on January 1, 1922, without any restriction or qualification whatsoever, the sum of $108,400, as rental for the six months ended December 31, 1921, which, under the provisions of the lease agreement, was to be applied in payment of the royalty for 500,000 tons of run-of-mine coal whenever the same should be extracted. This is one of the semiannual payments provided for during the life of the lease, which, in the last analysis, are minimum royalty payments assuring to the petitioner a minimum annual return from its properties during the continuance of the lease. With the passing of each 6-month period, beginning with July 1, 1921, the petitioner earned the right to receive from its lessee the semiannual payments provided for in the lease agreement; and it made no difference whether the lessee had extracted the specified tonnage of coal or none at all. It does not appear from the lease agreement that the petitioner is obligated to make any adjustment, by way of rebate or otherwise, of any amount paid or due to it in the event of the termination of the lease and failure of the lessee to extract the tonnage to which it is entitled. In fact, it is quite clear that the intent of the parties in such an event is that there shall be no such adjustment, for the payments by the lessee are regarded as rentals first and are only to be applied in payment of coal as, when, and if the coal is extracted. Had the lessee abandoned the lease on January 1, 1922, the petitioner's right to receive the full amount of the rental payment due on that date would have been none the less fixed, notwithstanding that the lessee had extracted less tonnage than it was privileged to take under the agreement. These considerations indicate that the right of the petitioner to receive, retain and enjoy the semiannual payments was not based upon any condition. Its covenants faithfully performed, the mere passing of each 6-month period was sufficient to vest petitioner with the right to receive the rental payment for that period. Under such circumstances, there can be no doubt that the semiannual payment due petitioner on January 1, 1922, as rental for the six months ended December 31, 1921, was earned in the taxable year 1921.

We have considered all of the evidence presented, together with the able briefs filed by counsel, but we remain unconvinced of the presence of any circumstances, at the close of 1921, justifying a postponement of accounting for the rentals earned within that year to a later accounting period, a course entirely out of harmony with the accounting for all other income and for all expenses of the year. We are told that at the close of 1921 the Clarkson Mining Co. had

already shut down operations in two or three of its mines; that economic conditions in the Ohio coal fields, where petitioner's properties were located, were abnormal; and that the petitioner was greatly worried as to whether the lessee would meet the payment due on January 1, 1922, and subsequent payments. Conceding all of those circumstances to be true, we can not overlook the facts that the lessee had deposited with the trustee, as required by the lease agreement, the security fund of cash or securities, or both, of a value of $250,000, a sum more than twice as great as the maturing rental payment; that the trustee was authorized, at the request of the petitioner and upon satisfactory showing that the lessee was in default, to liquidate, out of the security fund, any obligation of the lessee in respect of which it may have defaulted; and that the rental payment which became due on January 1, 1922, was actually paid by the lessee on or before January 4, 1922, and before the books were closed for 1921.

In this case, also, we find all of the expenses incurred during the period of 1921 when the lease was in effect accounted for as of that year, while all of the income of the same period remains unaccounted for until a later accounting period. The petitioner attempts to justify this course on the grounds that the expenses incurred during 1921 bore no relation to the earnings after April 1, and that the lease agreement was the source of earnings after April 1, which would have been received whether there had been expenses incurred or not. On the other hand, it would seem that the expenses incurred after April 1 were more closely related to the earnings after that date than to prior earnings. The petitioner found it necessary to maintain its business organization after April 1 for the purpose, primarily, of carrying on its business as lessor, and any expenses incurred after that date were certainly incidental to the earning of the income from that business.

In view of the foregoing, we hold that the method of accounting employed by the petitioner in 1921 does not clearly reflect the net income of that year, and that such net income can not be clearly reflected except by including therein the rental payment of $108,400, due on January 1, 1922 and paid shortly thereafter, but earned during 1921. This is what the respondent has done, and we shall not disturb his action.

Reviewed by the Board.

*Judgment will be entered for the respondent.*